**UNITED STATES of America, Plaintiff,**

v.

**James William SMITH, Defendant.**

**No. CR. 00–80112.**

United States District Court, E.D. Michigan, Southern Division.

Dec. 4, 2003.

Blondell L. Morey, Stephen T. Robinson, United States Attorney's Office, Detroit, MI, for Plaintiff.

Penny R. Peardslee, Nancy L. McGunn, Federal Defender's Office, Detroit, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

## I. INTRODUCTION

By order dated January 5, 2001, this Court sentenced defendant, James William Smith, to 21 months of imprisonment, three years supervised release, and a restitution payment of $61,774.80, after defendant pleaded guilty to making false statements to the Social Security Administration ("SSA") in violation of 18 U.S.C. § 1001. On appeal, defendant contested the amount of restitution. On remand, the Sixth Circuit has ordered this Court to resentence defendant in accordance with Fed.R.Crim.P. 32(c)(1)[1], and specifically, to determine whether defendant should receive an offset in the amount of restitution owed to the SSA.

## II. FACTUAL BACKGROUND

The facts of this case are set out in detail in *US v. Smith*, 344 F.3d 479 (6th Cir.2003). The following additional facts are relevant on remand. Defendant Smith admits he fraudulently used the name and social security number of Michael C. Johnson to file for social security benefits. (Def.'s Sentencing Memo. p. 2.) The Government states that at the time defendant applied for social security benefits, in 1995, defendant applied for both disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. (Govt.'s Supp. Memo. Regarding Restitution, fn. 1.) The SSA awarded defendant DIB, but not SSI benefits, based on a review of the earnings listed under Johnson's social security number.[2] (Claims Rep., Newman,

---

1. On December 1, 2002 the Federal Rules of Criminal Procedure were amended, and Rule 32(c)(1) was replaced with Rule 32(i)(3). On appeal, the Sixth Circuit applied Rule 32(c)(1), the rule in effect at the time of defendant's sentencing hearing held on January 3, 2001. The court noted it would reach the same result under the new rule.

2. While the SSA awards DIB to disabled persons based on their past earnings and payment of social security taxes pursuant to Title

Ltr. of May 8, 2000.) These included the combined earnings of defendant, who had lived falsely under Johnson's identity, and those of Johnson. (Claims Rep., Newman, Ltr. of May 8, 2000.)

On September 11, 2000, defendant pleaded guilty to knowingly and wilfully making false statements to the SSA. (Arraignment and Plea Tr., Sept. 11, 2000, p. 14.) The presentence investigation report prepared by the United States Probation Department determined that "between 1995 and 1999, Smith caused $61,774.80 to be fraudulently collected" from the SSA. (Presentence Rpt., ¶ 19.) At the sentencing hearing held on January 3, 2001, the amount of loss sustained by the SSA, and thus the amount of restitution owed by defendant, was contested. The Government argued that defendant should be ordered to pay restitution in the amount of $61,774.80, the amount of DIB collected fraudulently by defendant (Sentencing Hearing Tr., Jan. 3, 2001, p. 20). Defendant contended that the amount of restitution should be offset by $28,064, the amount defendant alleged he could have received legally in SSI benefits had he applied under his true identity. (Sentencing Hearing Tr., Jan. 3, 2001, p. 19.)

On January 5, 2001, this Court entered an order sentencing defendant to a restitution payment of $61,774.80, subject to further inquiry with the SSA regarding defendant's offset theory.[3] Subsequently, on October 4, 2001, this Court granted the Government's motion to enter a letter from the SSA dated September 5, 2001 into the record. Defendant appealed both the judgment and the order admitting the SSA's letter into the record. On appeal, the Sixth Circuit vacated defendant's sentence as to the amount of restitution, reversed the order admitting the SSA's letter into the record, and remanded this case for resentencing in accordance with Fed.R.Crim.P. 32(c)(1). *U.S. v. Smith,* 344 F.3d 479 (6th Cir.2003).

## III. ANALYSIS

### A. The SSA is Entitled To Recover the Full Amount of DIB Fraudulently Obtained by Defendant

In order to be entitled to DIB under Title II, a person must: (1) be insured for disability insurance benefits; (2) be below the age of retirement; (3) apply for disability insurance benefits; and (4) be under a disability. 42 U.S.C. § 423(a)(1). *See also* 20 C.F.R. § 404.315. To qualify as "insured," a person disabled after the age of 31 must have attained "not less than 20 quarters of coverage during the 40–quarter period" ending with the month for which the individual seeks disability benefits. 42 U.S.C. § 423(c)(1)(B)(i). *See also* 20 C.F.R. § 404.130(b). Quarters of coverage are credited to individuals based on their past earnings covered under social security. 20 C.F.R. § 404.140(a).

The filing of an application is a substantive requirement for entitlement to disability insurance benefits, pursuant to 42 U.S.C. § 423 and 20 C.F.R. § 404.315. *See Yeiter v. Sec. of Health & Human Services,* 818 F.2d 8 (6th Cir.1987). The regulations emphasize that though an in-

---

II of the Social Security Act, 42 U.S.C. § 423, the SSA provides SSI to disabled individuals on the basis of financial need, pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

**3.** This Court notes that had either defendant or the U.S. Attorney's office briefed this Court on the controlling law, as set out in Title 42 of the United States Code and Title 20 of the Code of Federal Regulations, this Court would have had before it, at defendant's first sentencing hearing, sufficient information upon which to make a determination as to defendant's offset theory. As is explained below, pursuant to the plain language of the regulations, defendant's offset theory has no merit.

dividual may meet all other eligibility requirements, an individual "must file an application to become entitled to benefits." 20 C.F.R. § 404.603. To be considered a valid application for benefits, an application must be: (1) on an application form prescribed by the SSA; (2) completed and filed with the SSA; and (3) signed by the claimant or someone authorized to sign for the claimant. 20 C.F.R. § 404.610.

In the event payment is made erroneously to an individual failing to meet one or more of the requirements of entitlement, the SSA may recover such overpayment. 20 C.F.R. § 404.515. The SSA may compromise or suspend collection of overpayments in certain circumstances where the overpaid individual is without fault. 20 C.F.R. § 404.512. However, 20 C.F.R. § 404.515 explicitly provides that "a claim for overpayment will not be compromised, nor will there be a suspension or termination of collection of the claim by the Administration if there is an indication of fraud, the filing of a false claim, or misrepresentation" on the part of an overpaid individual. 20 C.F.R. § 404.515.

■ In this case, defendant did not meet the requirements for entitlement to DIB for two reasons. First, defendant earned only 11 quarters during the 40 quarter period prior to his disability onset date, and therefore would have been found ineligible for disability benefits had he applied on the basis of his own earnings. (Claims Rep., Newman, Ltr. of May 8, 2000.) Second, defendant never filed a valid application. The application submitted by defendant under Johnson's name was not signed by Johnson, the stated claimant, and defendant clearly lacked the authority to file in Johnson's name. As a result of defendant's misrepresentations, the SSA erroneously paid defendant $61,774.80 in DIB to which defendant was not entitled. Pursuant to 20 C.F.R. § 404.515, the SSI is entitled to recover the full amount of DIB fraudulently obtained by defendant.

## B. Defendant Is Not Eligible For an Offset Based on SSI Benefits

■ Though defendant admits he was not entitled to the DIB he received, (Def.'s Supp. Memo. After Remand, Ex. 1, Def. Atty. Ltr. of Sept. 25, 2003), defendant alleges "his documented mental health condition made him eligible for SSI benefits." (Def.'s Supp. Memo. After Remand, p. 5.) Therefore, defendant contends that he should not have to repay to the SSA the full amount of the DIB he obtained fraudulently. (Def.'s Memo. After Remand, p. 7–8.) Instead, defendant argues the amount of restitution should be the difference between the amount of DIB defendant obtained, $61,774.80, offset by the amount of SSI benefits defendant alleges he "would have been entitled to had he applied under his own name." (Def.'s Memo. After Remand., p. 4.)

In order to be "eligible" for SSI benefits, a person must meet all the requirements set out in 20 C.F.R. § 416.202, including the requirement that a person must "file an application for SSI benefits." 20 C.F.R. § 416.202(g). See 20 C.F.R. § 416.305. To constitute a valid claim for benefits, an application must be: (1) on an application form prescribed by the SSA; (2) filed with the SSA or at another office designated by the SSA; and (3) signed by "the claimant or someone who may sign an application for the claimant." 20 C.F.R. § 416.310. In the present case, defendant submitted a fraudulent application for benefits under a false name which was not signed by the named claimant on the application, Johnson. Therefore, because defendant did not file a valid application, he is not eligible for SSI benefits.

Importantly, the regulations specify that the earliest month for which a claimant may receive SSI benefits is "the month following the month [the claimant] filed the application" for SSI benefits. 20 C.F.R. § 416.335. *See* 20 C.F.R. § 416.200. In other words, unlike DIB, which may be awarded retroactively for up to 12 months immediately prior to the date of an individual's application, 20 C.F.R. § 404.621(a), SSI benefits may not be awarded retroactively prior to the date an application is filed. Therefore, in the instant case, even if defendant Smith filed an application for SSI benefits today with the SSA and was found eligible for benefits, he would not be entitled to any retroactive SSI payments.[4] Because defendant is precluded by law from receiving any retroactive payments of SSI benefits for the period in question, defendant has no basis upon which to claim entitlement to an offset in the amount of restitution owed by him to the SSA.

## IV. CONCLUSION

For the foregoing reasons, defendant is ordered to pay restitution to the SSA in the amount of $61,774.80.

**IT IS SO ORDERED.**

---

**4.** Defendant has filed a motion to compel the SSA to produce information regarding the amount of "SSI benefits Smith would have been eligible for under his true name" had he applied. (Def. Mt. to Compel Production Of or For an Order Directing Social Security To Produce Requested Information, p. 4). In light of this Court's determination that defendant is not eligible for SSI benefits as he has not applied for them under his true identity, and because SSI payments may not be made retroactively prior to the date of a claimant's application, defendant's motion is moot.

Furthermore, defendant's motion relies heavily on the unpublished opinion of *U.S. v.*

*Poole,* 4 Fed.Appx. 262, 2001 WL 128332 (6th Cir.2001) for the proposition that the SSA may permit, and has "permitted an offset in cases where the defendant filed for benefits under a false name." (Def. Mt. to Compel, p. 4, fn. 1.) This case provides no authority for the present matter. First, as an unpublished opinion, *Poole* does not bind this Court. Second, *Poole* is distinguishable. Unlike the present case, the defendant in *Poole,* who obtained DIB benefits fraudulently, was eligible for DIB based on his own identity, and had applied for and received SSI benefits under his own identity. *U.S. v. Poole,* 4 Fed. Appx. 262, 2001 WL 128332 (6th Cir.2001).